# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| **BENNIE RAY ROBERTS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action Nos. 2:23-00019** |
| **v.** | ) | |
| | ) | |
| **RUSSELL MASTON,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## PROPOSED FINDINGS AND RECOMMENDATION

On January 12, 2023, the Court filed what it construed as a Complaint claiming entitlement to relief pursuant to 42 U.S.C. § 1983. (Document No. 1.) Although Plaintiff indicated that he was pursuing a claim pursuant to Section 1983, Plaintiff filed a "Notice of Appeal." (Id.) The undersigned notified Plaintiff that to the extent Plaintiff was wishing to appeal a decision made by a State court to this Court, such was inappropriate.[1] (Document No. 6.) The undersigned further notified Plaintiff that to the extent Plaintiff was wishing to purse a Section 1983 claim before this Court, Plaintiff must file an Amended Complaint setting forth his claims.[2] (Id.) By Order entered on January 17, 2023, the undersigned directed Plaintiff to (1) amend his Complaint, and (2) either pay the filing and administrative fee or file an Application to Proceed Without Prepayment of Fees and Costs by February 21, 2023. (Id.) On February 28, 2023, Plaintiff filed a Motion to Extend

---

[1] "Under the *Rooker-Feldman* doctrine, lower federal courts generally do not have jurisdiction to review state-court decisions; rather, jurisdiction to review such decisions lies exclusively with superior state courts and, ultimately, the United States Supreme Court." *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997)(*citing District of Columbia Ct. App. v. Feldman*, 460 U.S. 462, 482-86, 103 S.Ct. 1303, 1314-17, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923)); *also see Friedman's Inc. v. Dunlap*, 290 F.3d 191, 196 (4th Cir. 2002)(*quoting Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 196 (4th Cir. 2002)("[F]ederal courts are divested of jurisdiction 'where entertaining the federal claim should be the equivalent of an appellate review of the state court order.'")).

[2] The allegations as contained in Plaintiff's Complaint/Notice of Appeal contains only vague and conclusory allegations against the named Defendants. (Document No. 1.)

Time regarding the filing of his Application to Proceed Without Prepayment of Fees and Costs and his Amended Complaint. (Document No. 8.) By Order entered on March 1, 2023, the undersigned granted Plaintiff's Motion allowing him until April 12, 2023 to (1) amend his Complaint and (2) either pay the filing and administrative fee. (Document No. 9.)

On March 27, 2023, Plaintiff, acting *pro se*, filed his Amended Complaint claiming entitlement to relief under 42 U.S.C. §1983.[3] (Document No. 10.) In his Amended Complaint, Plaintiff names the following as Defendants: (1) Russell Maston, Superintendent of Saint Marys Correctional Center; (2) Brad Douglas, Department of Corrections; (3) W.J. Sadler, Circuit Court Judge for Mercer County; (4) Scott Ash, Prosecutor for Mercer County; (5) Corp. Long, West Virginia State Trooper; (6) John Doe 1, West Virginia State Trooper; (7) John Doe 2, West Virginia State Trooper; (8) Corp. Tension, West Virginia State Trooper; (9) John/Jane Does, West Virginia Crime Lab; and (10) Mrs. Bennett, Mr. Bennett's wife. (Id., p. 1.) Plaintiff alleges that the West Virginia State Police came by his residence to speak with him, but he was not home at the time. (Id.) Plaintiff indicates that the State Troopers informed Plaintiff's daughter that they would like for Plaintiff "to come and talk to them." (Id.) Plaintiff states that a few days later, Plaintiff went to the State Police Station "to see what they wanted." (Id.) Plaintiff states that he was taken to an interview room, interviewed, and "they let [him] go." (Id.) Plaintiff claims that the "State Police had him to come down two or three times" and Plaintiff was arrested on his "third or fourth" visit. (Id., p. 2.) Upon his arrest, Plaintiff states that he was taken to a "room that used to be a garage" where the State Troopers "placed leg cuffs and ran them through a ring mounted on the floor, then [Plaintiff's] hands were cuffed to the bench arm mounted to the floor." (Id.) Plaintiff

---

[3]    Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

alleges that Corp. Tensions, Trooper Long, and two other John Doe Troopers were in the room when Trooper Long stated that he wanted Plaintiff to confess to murdering Mr. Bennett. (Id.) Plaintiff claims that when he denied murdering Mr. Bennett, "Mr. Long took his stick off his side and hit [Plaintiff] with it between his eyes and his ear on the left side of his head." (Id.) Plaintiff asserts that "Corp. Tensions was helping him with the assault." (Id.) Plaintiff contends that "again Mr. Long said confess to the murder of Mr. Bennett" and Plaintiff again refused. (Id.) Plaintiff states that again "Mr. Long took the stick and hit [Plaintiff's] eye bone on the left side of his head." (Id.) Plaintiff alleges that Troopers Long and Tensions' "actions were done in a malicious or sadistic manner for the purpose of causing harm." (Id.) Plaintiff further claims that a medical evaluation conducted on the date of his arrest indicated that Plaintiff suffered "an injury" and his "booking photo" also exhibits the injury. (Id.) Therefore, Plaintiff contends that Troopers Long and Tensions subjected him to excessive force and the two John Doe Troopers subjected him to cruel and unusual punishment by failing to protect him in violation of Plaintiff's constitutional rights. (Id., pp. 2 – 5.) Plaintiff further concludes that Corp. Tensions, Trooper Long, and two John Doe Troopers subjected him to a false arrest and denied him the right to counsel during his interrogation. (Id.)

Next, Plaintiff claims that he "was tried and convicted before the alleged victim was dead."[4] (Id., p. 5.) Plaintiff claims that his trial counsel tried "to put on a motion to the Mercer County Circuit Court but the Honorable Judge abused his power and allowed something to happen that should not happen." (Id.) Plaintiff states that "[t]he trial transcript will be needed to obtain the supporting documents [but] [o]ver the last fifteen years, the prison has lost [Plaintiff's] trial

---

[4] On the morning of September 20, 2007, Mr. Bennett's body was discovered with indications of an assault with severe head injuries. Mr. Bennett was taken to Bluefield Regional Medical Center and subsequently transferred to a hospital in Roanoke, Virginia, where he was placed on life support. On September 25, 2007, Mr. Bennett's wife elected to discontinue the life support and he died. (Case No. 1:13-cv-23245, Document No. 27, p. 10.)

transcript." (Id.) Plaintiff states that "[a]n investigation from the United States Marshal proved his innocence and unjust conviction" and "[t]he United States Marshal sent a copy of the report to the Supreme Court of Appeals, but the Supreme Court of Appeals still upheld the unlawful conviction." (Id.) Plaintiff states that he is aware that a "judge has immunity when he is using his position correctly, but if he abuses the power of his seat, then he is likely to be sued." (Id., p. 6.) Plaintiff contends that Circuit Court Judge Sadler violated Plaintiff's constitutional rights by the following: (1) Allowing the wrongful conviction of Plaintiff; (2) Engaging in "unreasonable procedural;" (3) Violating his judicial oath and "canons and rules." (Id., pp. 6 – 8.)

Finally, Plaintiff appears to allege that Circuit Court Judge Sadler has arbitrarily and capriciously denied Plaintiff's multiple *habeas corpus* petitions. (Id., pp. 8 – 9.) Plaintiff states that "[e]ach time the Honorable Judge turns the habeas down, the Supreme Court of Appeals upholds the illegal action of the Circuit Court." (Id., p. 8.) Plaintiff further states that he "went as far as to put a habeas in the United States District Court for the Southern District of West Virginia" and "[i]t was also remanded back to the Mercer County Circuit Court to be turned down." (Id.) Plaintiff, therefore, states that he "needs this Honorable Court to find that W.J. Sadler, Mercer County Circuit Court Judge, in fact, actions were arbitrary and capricious." As relief, Plaintiff requests his "immediate release" and monetary damages, (Id., pp. 5, 8, 9.)

Despite being granted an extension of time until April 12, 2023, to either pay the filing and administrative fee or file an Application to Proceed Without Prepayment of Fees and Costs, Plaintiff has failed to do either. (See Document No. 9.)

## THE STANDARD

Pursuant to 28 U.S.C. § 1915A, the Court is required to screen each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. On

screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327-28, 109 S.Ct. at 1833. A complaint, therefore, fails to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

This Court is required to liberally construe *pro se* documents, holding them to a less stringent standard than those drafted by attorneys. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (1978). Liberal construction, however, "does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Miller v. Jack, 2007 WL 2050409, at * 3 (N.D.W.Va. 2007)(citing Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.1978)). Further, liberal construction does not require the "courts to conjure up questions never squarely presented to them." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). In other words, a court may not construct legal argument for a plaintiff. Small v. Endicott, 998 F.2d 411 (7th Cir.1993). Finally, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court.

Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir.1990)). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); also see Goode v. Central Va. Legal Aide Society, Inc., 807 F.3d 619 (4th Cir. 2015).

## ANALYSIS

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). Title 42 U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." Thus, Section 1983 provides a "broad remedy for violations of federally protected civil rights." Monell v. Dep't of Social Services, 436 U.S. 658, 685, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Generally speaking, to state and prevail upon a claim under 42 U.S.C. § 1983, a Plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived him of an alleged right, privilege or immunity protected by the Constitution or laws of the United States.

1.    **Statute of Limitations:**

A Plaintiff must file a Section 1983 action within the prescribed time period. Because there is no federally prescribed statute of limitation, Courts look to and apply their respective State's statutes of limitation. See Owens v. Okure, 488 U.S. 235, 249-50, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). The Fourth Circuit has recognized that "in the absence of any state statute of limitations specifically applicable to suits to redress a violation of civil rights, the West Virginia limitation on personal injury actions applies." McCausland v. Mason County Bd. of Ed., 649 F.2d 278 (4th Cir. 1981), cert. denied, 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981). Under West Virginia

law, the applicable period of limitation upon a plaintiff's right to file a personal injury is two-years from the time the cause of action accrued. See W.Va. Code § 55-2-12(b).[5] The applicable period of limitations for a claim of false imprisonment is one-year. Wilt v. State Auto. Mut. Ins. Co., 203 W.Va. 165, 506 S.E.2d 608, 613 (1998); also see Snodgrass v. Sisson's Mobile Home Sales, Inc., 161 W.Va. 588, 244 S.E.2d 321 (1978). Although the limitation period is borrowed from State law, the question of when a cause of action accrues is answered according to federal law. See Brooks v. City of Winston-Salem, NC, 85 F.3d 178, 181 (4th Cir. 1996). Under federal law, a cause of action accrues "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Nasim v. Warden, MD House of Corr., 64 F.3d 951, 955 (4th Cir. 1995)(en banc), cert. denied, 516 U.S. 1177, 116 S.Ct. 1273, 134 L.Ed.2d 219 (1996)(citing United States v. Kubrick, 444 U.S. 111, 122-24, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979)). "Accrual of a claim does not 'await awareness by the plaintiff that his injury was negligently inflicted.'" Nasim, 64 F.3d at 955 (quoting Childers Oil Co., Inc. v. Exxon Corp., 960 F.2d 1265, 1272 (4th Cir. 1992)). Accordingly, for a Section 1983 action, "a cause of action accrues either when the plaintiff has knowledge of his claim or when he is put on notice -- e.g., by the knowledge of the fact of injury and who caused it -- to make reasonable inquiry and that inquiry would reveal the existence of a colorable claim." Nasim, 64 F.3d at 955. To determine when a plaintiff possessed knowledge of his injury, the Court "may look to the common-law cause of

---

[5]    West Virginia Code § 55-2-12 provides as follows:

> Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.

action most closely analogous to the constitutional right at stake as an 'appropriate starting point.'" Brooks, 85 F.3d at 181 (citations omitted).

As to Plaintiff's excessive force and cruel and unusual punishment claims, the undersigned will apply West Virginia's two year limitation period as to personal injury actions. Thus, the undersigned must determine when Plaintiff's above cause of action accrued. In his Amended Complaint, Plaintiff alleges that the incident of the excessive force and failure to protect occurred on the day of his arrest for the murder of Mr. Bennett and that Plaintiff has now been incarcerated for over 15 years. (Document No. 10, pp. 2 – 5, 9.); See Nasim, 64 F.3d at 953-54(finding that the statute of limitations may be addressed *sua sponte* when such a defense appears on the face of the complaint filed *in forma pauperis* pursuant to 28 U.S.C. § 1915). The undersigned also takes judicial notice that Plaintiff was arrested on January 17, 2008. See Roberts v. Ballard, Case No. 1:13-cv-23245 (S.D.W.Va. Sep. 30, 2014), Document No. 25-1, p. 23. The undersigned finds that Plaintiff had knowledge of his claim, or was put on notice to make a reasonable inquiry as to his claim, on January 17, 2008. Accordingly, by applying the West Virginia two-year statute of limitation together with the federal standard of accrual, the undersigned finds that Plaintiff's above cause of action expired, at the latest, on January 17, 2010, two-years from the date Plaintiff was allegedly subjected to the excessive force and cruel and unusual punishment. Plaintiff initiated the above action on January 12, 2023, nearly 13 years after the limitations period expired. Accordingly, Plaintiff's Complaints should be dismissed because the two-year statute of limitations has run as to Plaintiff's above claim.

Liberally construing Plaintiff's Amended Complaint, Plaintiff appears to allege that he was falsely arrested and falsely imprisoned based upon insufficient evidence. To the extent Plaintiff is asserting such claims, the undersigned will briefly consider the timeliness. A Section 1983 claim

8

for false arrest and false imprisonment accrues when the claimant is detained pursuant to legal process.[6] Wallace v. Kato, 549 U.S. 384, 127 S.Ct. 1091, 1100, 166 L.Ed.2d 973 (2007)(holding "that the statute of limitations upon a § 1983 claim seeking damages for false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process."); Owens v. Blatimore City States Attorneys Office, 767 F.3d 379, 389 (4th Cir. 2014)(explaining that "the statute of limitations for false imprisonment does not begin to run at the *outset* of a Plaintiff's false imprisonment; rather, limitations begin to run only at the *end* of a Plaintiff's false imprisonment."); Magwood v. Streetman, 2016 WL 5334678, * 5(D.S.C. Aug. 15, 2016)(explaining that false imprisonment consists of detention without legal process, which ends once the victim becomes held pursuant to such process); Smith v. Allred, 2016 WL 1274593, * 8 (S.D.W.Va. March 31, 2016)(J. Copenhaver)([S]ection 1983 claims for wrongful arrest do not accrue until the individual is released or his detention becomes lawful."). A plaintiff's claim for false arrest or false imprisonment ceases once plaintiff is detained pursuant to legal process, and at this point, plaintiff's claim becomes a claim of malicious prosecution.[7] See Wallace, 549 U.S. at 388-89, 127 S.Ct. at 1091("Reflective of the fact that false imprisonment consists of detention without legal

---

[6]  The Supreme Court noted that "[f]alse arrest and false imprisonment overlap; the former is a species of the later." *Wallace*, 127 S.Ct. at 1095.

[7] A Section 1983 claim for malicious prosecution accrues when the prosecution has terminated in Plaintiff's favor. It is of significance to note here for purposes of accrual the distinction between a claim for false arrest or imprisonment and malicious prosecution. Generally, a plaintiff knows of his injuries in a cause of action for false arrest without probable cause on the date of his arrest. Thus, a cause of action for false arrest will accrue at the time of arrest. *See Covington v. City of New York*, 171 F.3d 117 (2d Cir.), *cert. denied*, 528 U.S. 946, 120 S.Ct. 363, 145 L.Ed.2d 284 (1999); *Rose v. Bartle*, 871 F.2d 331, 348-49, 351 (3d Cir. 1989). A plaintiff does not know of his injuries in a cause of action for malicious prosecution, however, until the charges are disposed of in his favor. In the instant case, Plaintiff has failed to state a claim of malicious prosecution because he has not alleged that criminal proceeding terminated in his favor.

process, a false imprisonment ends once the victim becomes held pursuant to such process - - when, for example, he is bound over by a magistrate or arraigned on charges . . . Thereafter, unlawful detention forms part of the damages for the entirely distinct tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process.")(internal citations omitted). Id. at 1097; see also Brummett v. Camble, 946 F.2d 1178, 1184 (5th Cir. 1991), cert. denied, 504 U.S. 965, 112 S.Ct. 2323, 119 L.Ed.2d 241 (1992)(Listing federal cases adopting this common law rule); Albright v. Oliver, 510 U.S. 266, 280, 114 S.Ct. 807, 816, 127 L.Ed.2d 114 (1994)(J. Ginsburg, concurring)(Stating that the limitation period for a malicious prosecution claim should begin to run upon dismissal of the criminal charges, not at the start of the state procedures.).

The undersigned takes judicial notice that Plaintiff was arraigned by Mercer County Magistrate Rick Fowler on January 18, 2008. See Roberts v. Ballard, Case No. 1:13-cv-23245 (S.D.W.Va. Sep. 30, 2014), Document No. 12-1 and Document No. 27, p. 23. Based on the foregoing, the undersigned finds that Plaintiff was detained pursuant to legal process on January 18, 2008. Accordingly, by applying the West Virginia one-year statute of limitation together with the federal standard of accrual, the undersigned finds that Plaintiff's cause of action for false arrest expired on January 18, 2009, one-year from the date Plaintiff was detained pursuant to legal process. Plaintiff initiated the above action on January 12, 2023, nearly 14 years after the limitations period expired. Accordingly, Plaintiff's Complaints should be dismissed because the one-year statute of limitations has run to the extent Plaintiff is asserting claims of false arrest and false imprisonment.

2.    **Judicial Immunity**:

"Few doctrines were more solidly established at common law than the immunity of judges

10

from liability for damages for acts committed within their judicial jurisdiction, as this Court recognized when it adopted the doctrine in <u>Bradley v. Fisher</u>, 80 U.S. 335, __ S.Ct. ___, 20 L.Ed. 646 (1872)." <u>Imbler v. Patchman</u>, 424 U.S. 409, 419, 96 S.Ct. 984, 990, 47 L.Ed.2d 128 (1976). Judicial immunity does not attach when a judicial officer acts in the clear absence of all jurisdiction. <u>Stump v. Sparkman</u>, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); <u>Pressly v. Gregory</u>, 831 F.2d 514, 517 (4th Cir. 1987). The doctrine of judicial immunity, however, "attaches even if the act in question was in excess of [the judge's] authority." <u>Jackson v. Houck</u>, 181 Fed. App'x 372, 372 (4th Cir. 2006) (<u>quoting</u> <u>Mireles v. Waco</u>, 502 U.S. 9, 12-13, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991)). "This immunity applies even when the judge is accused of acting maliciously and corruptly, and it 'is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." <u>Id.</u> (adopting doctrine of absolute judicial immunity in Section 1983 actions) (internal citation omitted). Based upon the allegations contained in the Amended Complaint, the undersigned finds that Judge Sadler is absolutely immune from suit. In his Amended Complaint, Plaintiff contends that Judge Sadler violated Plaintiff's constitutional rights by the following: (1) Allowing the wrongful conviction of Plaintiff; (2) Engaging in "unreasonable procedural;" (3) Violating his judicial oath and "canons and rules." (Document No. 10, pp. 6 – 8.) As stated above, judges have absolute immunity for their judicial acts even when the judge is accused of acting maliciously and corruptly. The undersigned, therefore, respectfully recommends that Plaintiff's claim against Judge Sadler be dismissed.

**3.    <u>Prosecutorial Immunity</u>:**

Although Plaintiff names Prosecutor Scott Ash as a Defendant in his Amended Complaint, Plaintiff wholly fails to state any allegations against Prosecutor Ash. To the extent Plaintiff is

asserting a claim against Prosecutor Ash, the undersigned finds such a claim to be without merit. Prosecutors have absolute immunity for activities performed as "an officer of the court" if the conduct at issue is closely associated with the judicial phase of the criminal process. Van de Kamp v. Goldstein, 555 U.S. 335, 341 - 343, 129 S.Ct. 855, 860 - 862, 172 L.Ed.2d 706 (2009). In determining whether a prosecutor is entitled to absolute immunity, the Court must apply the "functional approach" examining the nature of the function performed. Id., 555 U.S. at 342, 129 S.Ct. at 861. It is well established that prosecutors are absolutely immune "for their conduct in initiating a prosecution and in presenting the State's case, insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.'" Burns v. Reed, 500 U.S. 478, 486, 111 S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991) (quoting Imbler, 424 U.S. at 430 - 431, 96 S.Ct. at 995). Further, absolute immunity extends to "actions preliminary to the initiation of a prosecution and actions apart from the courtroom." Buckley v. Fitzsimmons, 509 U.S. 259, 272, 113 S.Ct. 2606, 2615, 125 L.Ed.2d 209 (1993)(quoting Imbler, 424 U.S. at 431, 96 S.Ct. at 995 - 996)). A prosecutor acts as an advocate or "officer of the court" when performing tasks, such as (1) initiating a judicial proceeding, (2) presenting evidence in support of a search warrant application, (3) conducting a criminal trial, bond hearing, grand jury proceeding or pre-trial hearing, (4) engaging in "an out-of-court effort to control the presentation of [a] witness' testimony," and (5) making a "professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before the grand jury after a decision to seek an indictment has been made." Buckley, 509 U.S. at 272, 113 S.Ct. at 2615(quoting Imbler, 424 U.S. at 431, 96 S.Ct. at 995 - 996); Van de Kamp, 555 U.S. at 434, 129 S.Ct. at 861; Dababnah v. Keller-Burnside, 208 F.3d 467, 471 - 472 (4th Cir. 2000)(stating that "numerous courts have found prosecutors absolutely immune when undertaking [extradition proceedings].")

Furthermore, a prosecutor is entitled to absolute immunity even if he or she "acted with an improper state of mind or improper motive." Shmueli v. City of New York, 424 F.3d 231, 237 (2nd Cir. 2005); also see Smith v. McCarthy, 349 Fed.Appx. 851, 859 (4th Cir. 2009), cert. denied, 562 U.S. 829, 131 S.Ct. 81, 178 L.Ed.2d 26 (2010); Brown v. Daniel, 230 F.3d 1351 (4th Cir. 2000)("[T]o the extent [plaintiff] alleges that the prosecutors engaged in misconduct during the prosecution of this case . . ., the prosecutors are absolutely immune."). Thus, prosecutors are entitled to absolute immunity for withholding materially exculpatory evidence, and knowingly presenting perjured testimony or false or misleading evidence to the Court or grand jury. Burns, 500 U.S. at 490-92, 111 S.Ct., at 1941-42("A state prosecuting attorney is absolutely immune from liability for damages under § 1983 for participating in a probable-cause hearing . . .."); Imbler, 424 U.S. at 422, 96 S.Ct. 984 at 991(citing Yaselli v. Goff, 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927))(finding prosecutor entitled to absolute immunity for allegations that he "maliciously and without probable cause procured plaintiff's grand jury indictment by the willful introduction of false and misleading evidence."); also see Brown v. Daniel, 230 F.3d at 1352; Lyles v. Sparks, 79 F.3d 372, 377 (4th Cir. 1996); Carter v. Burch, 34 F.3d 257, 263 (4th Cir. 1994), cert. denied, 513 U.S. 1150, 115 S.Ct. 1101, 130 L.Ed2d 1068 (1995). Although prosecutors may be entitled to absolute immunity, prosecutors are subject to criminal and professional sanctions for prosecutorial abuses. Imbler, 424 U.S. at 429, 96 S.Ct. at 994; Malley v. Briggs, 475 U.S. 335, 343, n. 5, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). It is well recognized that "[a]bsolute prosecutorial immunity 'is not grounded in any special esteem for those who perform these functions, and certainly not from a desire to shield abuses of office, but because any lesser degree of immunity could impair the judicial process itself.'" Dababnah, 208 F.3d at 471(quoting Kalina v. Fletcher, 522 U.S. 118, 127, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997)). The Imbler Court determined the importance of

protecting the integrity of the prosecutor's office and the judicial system outweighs the desire to afford civil redress to a wronged defendant. Imber, 424 U.S. at 427 - 429, 96 S.Ct. at 993 - 994.

A prosecutor, however, is not entitled to absolute immunity for "investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." Buckley, 509 U.S. at 273, 113 S.Ct. at 2615(citing Burns, 500 U.S. at 491, 11 S.Ct. at 1941-42). Thus, a prosecutor is only entitled to qualified immunity for administrative actions or investigative functions not related to trial preparation, such as holding a press conference, engaging in investigative activity prior to the establishment of probable cause to arrest, providing police officers with legal advice during the investigative phase, or acting as a complaining witness in support of a warrant application. Id.; also see Van de Kamp, 555 U.S. at 342 - 343, 129 S.Ct. at 861. The Supreme Court has explained as follows:

> There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is "neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other. Thus, if a prosecutor plans and executes a raid on a suspected weapons cache, he "has no greater claim to complete immunity than activities of police officers allegedly acting under his direction."

Buckley, 509 U.S. at 273, 113 S.Ct. at 2616(internal citations omitted). Thus, a prosecutor does not have absolute immunity for a claim that he or she fabricated evidence during the preliminary investigation of an unsolved crime. Id., 509 U.S. at 275, 113 S.Ct. at 2616 - 2617.

Liberally construing Plaintiff's Amended Complaint, Plaintiff appears to argue that Prosecutor Ash improperly initiated and pursued criminal proceedings against Plaintiff. As stated above, prosecutors are entitled to absolutely immune when performing functions "intimately associated with the judicial phase of the criminal process." See Imber, 424 U.S. at 430, 96 S.Ct.

14

at 995. It is well established that prosecutors are absolute immunity for initiating a prosecution. <u>See</u> <u>Id.</u> Thus, Prosecutor Ash is entitled to absolute immunity for initiating and pursuing criminal proceedings against Plaintiff. To the extent Plaintiff is asserting a claim against Prosecutor Ash, the undersigned recommends that Plaintiff's claim be dismissed as Prosecutor Ash is entitled to absolute immunity from suit under Section 1983.

**4.    <u>Defendant Bennett</u>:**

In his Amended Complaint, Plaintiff names "Mrs. Bennett, Mr. Bennett's wife" as a Defendant. (Document No. 10.) Plaintiff wholly fails to state any allegations against Mrs. Bennett besides indicating that she was the wife of the victim (Mr. Bennett). (<u>Id.</u>) As stated above, to state and prevail upon a claim under 42 U.S.C. § 1983, a Plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived him of an alleged right, privilege or immunity protected by the Constitution or laws of the United States. There is no allegation or indication as to how Mrs. Bennett may have been a "state actor" for purposes of Section 1983. Even assuming Mrs. Bennett may have been a witness for the State, she was not a "state actor" for purposes of Section 1983.[8] "[P]rivate citizen witnesses are not 'state actors' . . . under § 1983." <u>Nelson v. Thornsbury</u>, 2010 WL 1038509 (S.D.W.Va. Jan. 12, 2010). Thus, Plaintiff cannot pursue a Section 1983 claim against Mrs. Bennett.

**5.    <u>Heck</u>:**

Finally, Plaintiff appears to allege that his constitutional rights were violated during the

---

[8]  Even assuming Mrs. Bennett was a witness and a state actor, she would be entitled absolute immunity. Witnesses who testify in Court, including police officers, are absolutely immune from any claims relating to their testimony. *Briscoe v. LaHue*, 460 U.S. 325, 326, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983)(witnesses in judicial proceedings receive "absolute immunity from damages liability under § 1983 based on their testimony").

course of his criminal proceedings in the Circuit Court of Mercer County. Specifically, Plaintiff

argues that he is innocent and was unjustly convicted. Plaintiff further claims that the Circuit Court

allowed Plaintiff to be tried and convicted of murder prior to the victim's death.[9] Without asserting

any allegations, Plaintiff names the following as Defendants: (1) Russell Maston, Superintendent

of Saint Marys Correctional Center; (2) Brad Douglas, Department of Corrections; and (3)

John/Jane Does, West Virginia Crime Lab. Liberally construing Plaintiff's Amended Complaint,

the undersigned assumes these individuals were named as Defendants due to his alleged wrongful

conviction and incarceration. Given the nature of Plaintiff's allegations, it appears that Plaintiff is

implying that his conviction is invalid as a result of various constitutional violations during

criminal proceedings in the Circuit Court of Mercer County, West Virginia. Consequently, the

undersigned finds that Plaintiff has failed to state a cognizable claim under Section 1983 pursuant

to Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). In Heck, the United

States Supreme Court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or
> imprisonment, or for other harm caused by actions whose unlawfulness would
> render a conviction or sentence invalid, a § 1983 plaintiff must prove that the
> conviction or sentence has been reversed on direct appeal, expunged by executive
> order, declared invalid by a state tribunal authorized to make such determination,
> or called into question by a federal court's issuance of a writ of habeas corpus, 28
> U.S.C. § 2254. A claim for damages bearing the relationship to a conviction or
> sentence that has not been so invalidated is not cognizable under § 1983.

Id. at 486-87, 114 S.Ct. 2372. See also Ballenger v. Owens, 352 F.3d 842 (4th Cir. 2003)(holding

---

[9] On the morning of September 20, 2007, Mr. Bennett's body was discovered with indications of an assault with severe head injuries. Mr. Bennett was taken to Bluefield Regional Medical Center and subsequently transferred to a hospital in Roanoke, Virginia, where he was placed on life support. On September 25, 2007, Mr. Bennett's wife elected to discontinue the life support and he died. See Roberts, Case No. 1:13-cv-23245, Document No. 27, p. 10. Plaintiff was arrested on January 17, 2008, indicted for First Degree Murder on June 10, 2008, and convicted on October 8, 2008. Id., Document No. 12-1 and Document No. 25-1, p. 23, and Document No. 27, p. 2.

that an arrestee's Section 1983 claim was not cognizable against state trooper, alleging unreasonable search and seizure, under *Heck,* since judgment in arrestee's favor would have implied the invalidity of conviction). Plaintiff does not indicate that he has been successful in a direct appeal or in *habeas* proceedings.[10] The undersigned, therefore, finds that because Plaintiff has not demonstrated that his criminal conviction has been invalidated, Plaintiff's Section 1983 claim is not cognizable pursuant to <u>Heck</u>. Accordingly, the undersigned respectfully recommends that the above claims be dismissed.[11]

<h3 style="text-align:center"><u>PROPOSAL AND RECOMMENDATION</u></h3>

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DISMISS** Plaintiff's Complaints (Document Nos. 1 and 10), and **REMOVE** this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the

---

[10] Although Plaintiff states that he "went as far as to put a habeas in the United States District Court for the Southern District of West Virginia" and "[i]t was also remanded back to the Mercer County Circuit Court to be turned down," such a statement is misleading. Although Plaintiff did file Section 2254 Petition in this Court, such was not "remanded back to the Mercer County Circuit Court." The District Court granted Respondent's Motion for Summary Judgment and denied Petitioner's Section 2254 Petition. *See Roberts*, Case No. 1:13-cv-23245, Document No. 34. On October 22, 2014, Plaintiff filed his Notice of Appeal. *Id.*, Document No. 35. On April 4, 2015, the Fourth Circuit Court of Appeal denied Plaintiff a certificate of appealability and dismissed his appeal. *Id.*, Document Nos. 39 and 40.

[11] Based on a review of a current Docket Sheet for Case No. 08-F-241 and the inmate locator for the WVDOC, Plaintiff was granted parole on or about April 3, 2023.

basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation and to Plaintiff, who is acting *pro se.*

Date: January 26, 2024.



Omar J. Aboulhosn
United States Magistrate Judge